# United States DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

FILED

OCT 2 0 2022

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

JONATHAN CLEVANT MCGOWAN, SR.                    CASE NO.5:21 CV 2015

_____ **PETITIONER,**

V.

WARDEN WILLIAMS COOL

**RESPONDENT,**

## PETITIONER'S TRAVERSE TO RESPONSE TO ORDER TO SHOW CAUSE

PETITIONER JONATHAN MCGOWAN MAKES HIS TRAVERSE TO THE RESPONSE OF RESPONDENT
IN THIS MATTER

As noted by the respondent,28 U.C.S. 2254 (d) provides a standard for when relief can be

granted for claims adjudication "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the supreme court

of the united states." The united states   supreme court interpreted that language in **Williams (Terry) v. Taylor, 529 U.S. 362 (2000).**

The court held that 2254(d)(1)'s "contrary to "clause required the rejection of state court decisions which were "substantially different from the relevant precedent of this court. " The court gave an example of a misinterpretation of **Strickland v. Washington, 466 U.S. 668, 694 (1984)**if a state court were to reject a prisoner's claim of ineffective assistance of counsel on grounds that the prisoner had not established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be "diametrically different, opposite in character or nature," and "mutually opposed" to our clearly established precedent because we held in Strickland that the prisoner need only demonstrate a "reasonable probability" that... the result of the proceeding would have been different. **Williams (Terry) v. Taylor, 529 U.S. 362, 405-406 (2000).** The court then considered the situation in which a state court correctly identifies the applicable Supreme court precedent and the standards contained in that precedent, best applies them unreasonably to the facts of the case. The court held that this situation requires relief under 2254(d)(1): "A state court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of particular prisoner's case certainly would qualify as a decision 'involving an unreasonable application of... clearly established federal law. "**Williams (Terry) v. Taylor, 529 U.S. 362,407-408(2000).** The court declined to decide how the" unreasonable application" clause applies when a state court decision either extends a legal principle from Supreme court precedent to a new context or declines to do so.

The court held in Williams (Terry) that an incorrect application of law is not the same as an unreasonable application of law. But the reasonableness of the state court decision is

evaluated objectively by the reviewing court, not by any sort of "majority rule" analysis. The court specifically rejected the standard of the fourth circuit, which had focused on whether "reasonable jurists" would find the state court determination, to be reasonable**.) Williams (Terry) v. Taylor,529 U.S. 362, 409-410(2000).**

While Williams (Terry) did not enunciate standard for the reasonableness determination, it did provide an illustration of the proper analysis when it applied the standard to the decision of the Virginia Supreme court in Mr. Williams' case, and found that court's decision to be an unreasonable application of clearly established federal law. In reaching this conclusion, the court examined the reasoning of the Virginia Supreme court both as to the legal standard which it applied and as to the application of that standard to the facts of the case. The court found two aspects of the Virginia court decision to be unreasonable: First, the Virginia Supreme court applied the wrong legal standard when it held that the prejudice standard of **Strickland v. Washington, 466 U.S. 668,688 (1984)** had been modified by **Lockhart v. Fretwell, 506 U.S. 364 (1993)** second, it failed to evaluate the evidence in the case properly in accordance with the correct standard when if found that the failure of Mr. Williams' counsel to present penalty phase evidence did not prejudice him. **Williams(Terry) v. Taylor, 529 U.S. 362,413-414 (2000).** Accordingly, the united states supreme court reversed Mr. Williams' sentence of death.

The united states supreme court recently expanded on its analysis of 28U.S.C.2254(d) AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied, **Carey v. Musladin ...127 S.CT. 649,656... (2000)** (Kennedy. J. Concurring in judgment). Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts "different from those of the case in which

the principle was announced." **Lockyer v. Andrade,538 U.S. 63,76... (2003).** The statute

recognizes, to the contrary, that even a general standard may be applied in an unreasonable

manner see, e.g. **Williams v. taylor,529 U.S. 362...** (finding a state-court decision both contrary

to and involving and unreasonable application of the standard set Forth in **Strickland v.**

**Washington, 466 U.S. 668(1984). Panetti v. Quarterman, 127 S.CT. 2842, (2007).**

In addition to the situation where a state court decision is "contrary to" or an

unreasonable application of clearly established federal constitutional law, 28 U.S.C. 2254(d)(2)

provides that a state court decision must be reversed, and relief must be granted if the state

court proceeding "resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding. "The application of this

standard was discussed **in Miller-El v. Cockrell, 537 U.S. 322(2003) (Miller-El):**

> Factual determinations by state court are presumed correct absent clear and
> convincing evidence to the contrary,2254(e)(1), and a decision adjudicated on the
> merits in a state court and based on a factual determination will not be over-
> turned on factual grounds unless objectively unreasonable in light of the evidence
> presented in the state court proceeding citation omitted Even in the context of
> federal habeas, deference does not imply abandonment or abdication of judicial
> review. Deference does not by definition preclude relief. A federal court can
> disagree with a state court's credibility determination and, when guided by
> AEDPA, conclude the decision was unreasonable or that the factual premise was
> incorrect by clear and convincing evidence. Citing Miller-El l, the court in **Collins v.**
> **Rice,365 F.3d 667,685 (9th cir. 2004).** Found the appellate court's determination
> that the trial judge properly accepted proffered "neutral" bases for peremptory
> challenges was not supported by the record, commenting, contrary to the
> assertion in the dissent, we not substituted our own judgment for that of the state
> court. "Even in the context of federal habeas, deference does not imply
> abandonment or abdication of judicial review. Deference does not by definition
> preclude relief. A federal court can disagree with a state court's credibility
> determination and, when guided by AEDPA, conclude the decision was
> unreasonable or that the factual premise was incorrect by clear and convincing
> evidence. "Miller-El,123 S.CT. at 1041; see also **Hall v. Dir. Of corrs, 343 F.3d**
> **976,984 n.8(9th cir. 2003)** (AEDPA, although emphasizing proper and due

deference to the state court's findings, did not eliminate federal habeas review. Where there are real, credible doubts about the veracity of essential evidence and the person who created it, AEDPA does not require us to turn a blind eye.")

Also applying Miller-El I, the court **in Parsad v. Greiner,337 F.3d 175, 180-181(2nd cir. 2003),** found that the state court's determination that a petitioner was not "in custody" for Miranda purposes was an unreasonable determination of the facts presented to the state court.

Explaining its ruling that the state court decision that the petitioner's plea agreement had not been breach was an unreasonable determination of the facts, the court in **Gunn v. Ignacio, 263 F.3d 965,970 (9th cir. 2001**), stated the standard as follows: We read the unreasonable determination of the facts criterion to require more than mere incorrectness, such that the state court's fact finding is so clearly erroneous' as to leave us with a firm conviction' that its determination was mistaken on the evidence before it "citing **Torres v. Prunty,223 F.3d 1103,1107-1108(9th cir. 2000)**see also **McClain v. Prunty, 217 F.3d 1209, 1223 (9th cir. 2000)**(Finding state court decision that prosecutor's "race-neutral" reasons justified peremptory strike was unreasonable determination of the facts).When it revisited Mr. Miller-El's case the supreme court found that the Texas court's determination of the facts was unreasonable under 28 U.S.C. 2254(d)(2): The state court's conclusion that the prosecutor's strikes of fields and warren were not racially determination is shown up as wrong to a clear and convincing degree; the state courts conclusion was unreasonable as well as erroneous, **Miller-El v. Dretke, 525 U.S. 231, 266(2005).** See also Collateral attack on criminal judgments,38 U. Chi.L. Rev. 142,160(1970).at 437-38.

Finally, if a legal issue has not been considered by the state court, this court must review it de novo. **Wiggins V. Smith, 539 U.S. 510,531(2203).**

## MERUTS OF GROUNDS FOR RELIEF

Ground no.1) The court erred by not allowing Petitioner to address his disputed with trial counsel for the record.

Ground no.2) Insufficient evidence was presented at trial to each element of the crimes alleged and the court erred in denying Petitioner's rule 29 motion and submitting that case to the jury.

**GROUND ONE:** Trial court erred in not allowing Petitioner to address his disputes with trial counsel on the record.

**Carriger v. Stewart,132 F.3d 463 (9th cir. 1997)** Petitioner had multiple disputes with his trial counsel, even though Petitioner show plain error that did occurred within his trial Petitioner also show violation of his Due-process of law to back up his argument.

When this claim was rejected it was rejected under the Strickland standard. Now under the Strickland standard it's a two-prong test, under the first prong a defendant must demonstrate that his trial counsel's performance was deficient.

Petitioner's trial counsel never used co-defendant Angela Briere prior statement against her, but instead helped Ms.Briere change her story while on cross- examination. See **Raether v. Meisner,608 Fed. Appx 409,** The state curt examined the prejudice flowing from each alleged error individually, but the correct question is whether Raether was prejudiced by counsel's error's

in the aggregate. See also **Toliverv. McCaughtry, 539 F.3d 766,778 (7th cir.2008)** We conclude that he was: In this battle of credibility, counsel's failure to make use of the witness's prior statement doomed Raether's prospects from the beginning. Had counsel cross-examined the witness adequately he could have cast significant doubt on Danielle's and Bragg's testimony, which was ripe for impeaching. His failure to do so is all the more striking because counsel told the jury he would undermine the witnesses' credibility "but never followed through on this suggestion. **Wiggins v. Smith, 539 U.S. 510, 123 S.CT. 2527,156 L.Ed.2d 471 (2003) see Hampton, 347 F.3d at 257.** And counsel compounded his error during his closing argument. **See Hall v. Washington, 106 F.3d 742,750 (7th cir. 1997)** Having failed to place into evidence the various inconsistencies between the witness testimony and prior statement, counsel neglected to make use of the inconsistencies that did appear in the record. Instead, he characterized the testimony of Danielle and Bragg as "scripted," a description that served to highlight the ways in which their testimony aligned. As the district court, recognized all counsel needed to do was undermine the credibility of the state's two witnesses. No other evidence existed on which to convict Raether. "counsel's" failure to use available tools to undermine this credibility resulted in prejudice. **William v. Washington, 59 F.3d 673, 684 (7th cir. 1995)** Because of counsel's substandard performance, Raether's trial did not reliably test, whether he did as he was accused.

A)    Petitioner argues, During cross-examination Petitioner's trial 2counsel refuse to use Ms. Briere prior statement and counsel only used from Ms. Briere prior statement was the fact Ms. Briere moved to Columbus on the 19th of January to be with her baby father **(Tr,vol 3. 433 at 13)** "it is right in her interview with Trooper Daley that she's down in Columbus, it said it in the police report about it. You listen to the entire statement when my client asked. So Petitioner's trial counsel admitted listening to the prior statement, but she failed to use the inconsistencies against her. But

instead, trial counsel used Antonio prior statement against her, and the state objected because Antonio never testify at trial (**Tr. Vol 3. 416 at 5**) Now what trial counsel should have done was ask in your statement Ms. Briere you did not know where you left from that morning or even if you went back to Jonathan McGowan apartment "See exhibit (A1) Angela Briere prior statement." Trial counsel did not point out more lies in Ms. Briere testimony, like the fact Ms. Briere testify that U-Haul pulled off to the brim of the highway. (**Tr. Vol 3. 422 at 7**) when Ms. Briere is testify to the route she took when going to check on the U-Haul at Mrs. McGowan daughter's house. Trial counsel knew that Ms. Briere was lying about direction she took because the route is impossibly to be done and with Petitioner's jury was all Stark county residence and not Akron residence, so the jury not knowing the streets they would never know if the testimony of Angela Briere, and trial counsel never pulled up maps to use the ripe for impeaching evidence, to show that it was perjury testimony. Ms. Briere was asked by trial counsel, "where do you get on 77 norths at, what entrance/exit? (**tr.vol 3.418 at 15**) Ms. Briere testimony was "I'm not sure what, where we got on at. Most of the entrance for 77 are block off in Akron so we kind of go to ones that I'm not so familiar with so I'm not sure what the street names would be, Ms. Briere was asked, approximately where on 77 in relation do you know what the next exit you pass going north? Ms. Briere testimony was, I'm not sure, it would be near the lakeshore and miller exit, though it would probably be just nort of that lakeshore and miller exit because that one closed or was closed at the time (**Tr.vol 3. 418-419 at 16**) Trial counsel knew Ms. Briere testimony was false reason why because the entrance by lakeshore and miller in Akron is not 77 norths for "one" for "two" that 76 easts to west "exhibit m1 of this traverse. Trial counsel should have used maps of Akron to show the jury the inconsistencies of Ms. Briere testimony. The inconsistencies are as follow:

1)      Ms. Briere testify that the entrance to I-77 north was just north of the lakeshore and miller entrance exhibit M1, will show that there not an entrance just north of that lakeshore and Miller entrance, also Ms. Briere testify that it takes 20,25, minus to get from petitioner's apartment to Mrs. McGowan's daughter's house, "**see exhibit M2-M3-M4-M5 of this traverse**"

2)      Ms.Briere testify that Petitioner spotted the U-Haul traveling south on I-77 south while Ms. Briere and Petitioner was traveling north at where  Akron and Canton meet 'another false testimony, " see exhibit M6" you will see that Canton is south of Akron and if Ms. Briere and Petitioner enter the highway south side of Akron going north , Canton is south of Akron already and it is an impossibly act once again.

3)      Ms. Briere testify that this red & silver pickup truck was in front of her & petitioner fired the shots at the U-Haul. Here the inconsistence come in at "victim" Thaddeus Rosser testify that same pickup truck was passing after the shooting occurred. So how would Petitioner do the shooting **(tr. Vol3.397 at 7)** & **(tr. Vol 2. 202-204)** Petitioner counsel failed to use the two different location of this red & silver pickup truck, see Ms. Briere prior statement Ms. Briere place that same vehicle on the passage side of the U-Haul, but at trial that same truck is in front of "them" her & Petitioner. "That mean Ms. Briere did not know the crime scene".

4)      When trial counsel tries to help Ms. Briere change her story Ms. Briere changed the location of where her & Petitioner stayed the night before, one min her & Petitioner is at Petitioner apartment on the south side of Akron, then the next min her & Petitioner stayed on the west side of Akron. Now in Ms.Briere  prior statement she did not know where her & Petitioner stayed the night at when they left to check on the U-Haul at Mrs. McGowan daughter house.

Ms. Briere testimony was fabricated and to believe coerce by the prosecuting office and trial counsel, because it could not be trial counsel strategy to instead impeach Ms. Briere, trial counsel help Ms. Briere use false testimony **(tr.vol 3. 419-420) see, Toliver v. McCaughtry, 539 F.3d 766,778 (7th cir 2008)** martin, 424 F.3d at 592. We conclude that he was: In this battle of credibility, counsel's failure to make use of the witness's prior statement doomed Raether's prospects from the beginning also see **Hall v. Washington, 106 F.3d 742, 750 (7th cir 1997)**

Having failed to place into evidence the various inconsistencies between the witnesses' testimony and prior statements, counsel neglected to make use of the inconsistencies that did appear in record. Defense counsel should have presented to the jury the only reason Ms.Briere knew of this red & silver truck is because Petitioner told her this when heard it from Antonio at T.V. court and Petitioner rely the information over the summit county jail call , states exhibit 12b. Ms. Briere took this information to help her story seem true. But each time she spoke of this red & silver truck it was wrong according to the "victims". With counsel services been constitutionally ineffective Petitioner was prejudice by counsel neglected to make use of the inconsistencies and Ms. Briere was the only evidence linking Petitioner to the crime scene. Counsel was not performance to the level of the Strickland standard.

B) Trial counsel failing to call witnesses Antonio Rosser, Steven Simmons Petitioner two alibi witnesses is a violation of clearly established federal law. **See Noble v. Kelly, 246 F.3d 93,** see also **Washington v. Texas, 388 U.S. 14,17-19)** Provides that the accused shell enjoys the right to have compulsory process for obtaining witnesses in his favor…

U.S. const.amend. VI also see **Taylor v. Illinois, 484 U.S. 400,** The supreme court up held an order excluding the testimony of a defense witness as a sanction for counsel's (I) non-compliance with a discovery rule that required notice of intention to call witness, and (ii) Misleading the court concerning his knowledge of the witness where about, although confirming that few right are more fundamental than that of an accused to present witnesses in his own defense, "id at 408, the court ruled the courts most balance that right against the state's interest in absolute right to control the time and content of his witnesses testimony, "id at 417."  With his counsel's non-compliance rendered his counsel's services constitutionally ineffective. **Bigelow v. Haviland, 576 F.3d 284,287,291-92.**

Petitioner argues, on Jan 17,2018 Petitioner was interviewed by Trooper Daley during this interview Petitioner did give Trooper Daley an alibi, Trooper Daley also interviewed this alibi witness.  This alibi witness is Steven Simmons, during Mr. Simmons interview he did admit that Petitioner was at his house for a full weekend, Mr. Simmons also admitted that he did not remember which weekend. This crime happens on Jan 14, 2018 which is a Sunday, making it the 2nd Sunday of Jan which is a weekend also Mr. Daley interviewed Mr. Simmons 21 days after Petitioner told him of the alibi witness making February 7, 2018 so the alibi witness could have easily lost trace of the days due to the time between the weekend Petitioner was at Mr. Simmons house. Petitioner inform trial counsel of this alibi witness Steven Simmons and counsel failed to file a notice of alibi defense nor did counsel call Antonio Rosser someone trial counsel tries to use to impeach Ms. Briere counsel's reasoning for not calling Antonio Rosser as a witness is as follow:

**Trial counsel:** you know, your honor, the only witness we had was Antonio Rosser, and based on the testimony this morning, I don't believe we're going to call him so we well end up resting.
The court: all right; Then here's what we'll do. Now you want to make—one second sir you want to make your motion?

**Trial counsel:** yes, your honor. Your honor, I would make a motion for judgment of acquittal pursuant to criminal rule 29 in that the state has failed to put fourth sufficient evidence on each and every element of the charge—off each and every element of each and every charge and specification in the indictment.

The court: okay. That will be over ruled. Okay. You had your hand up. Do you want to talk to counsel first? You're the defendant. Do you to talk to them before you talk to me?

**The Petitioner:** I can just talk to you.
The court: Are you okay with it, counsel? I don't know what he is going to say. What is your question, sir?

**The Petitioner:** My question is this, she stated on her statement that we dropped Antonio off at his sister's house on the west side of Akron and –
Trial counsel: Your honor, I'm just going to interject and say this is against the advice of counsel.

**The court:** Okay, this is against the advice of counsel, sir, I can't argue or litigate what the witness has testified to. Your attorney can argue that in closing argument.

**The Petitioner:** I am saying I understand that but I feel that the jury need to know where Antonio was really dropped off at because she just blatantly sat up there and lied where she said she dropped him off at.

**The Petitioner:** If they not going to call Antonio as a witness,

**(Tr. Vol3 488-489).**

 Not only was Petitioner denied compulsory process by trial counsel, Petitioner was also constructive denied of counsel. The Cronic decision limited the presumption of prejudice to cases where defense counsel "entirely fails to subject the prosecution case to meaningful adversarial testing in the trial, or where there is" the complete denial of counsel "at a" critical stage of the trial." **Cronic, 466 U.S. at 659.** This part of Cronic is very telling in what the word "counsel" means: advice or assistance. This is the first definition found in the Black's Law Dictionary. This means that a lawyer can be by your side and you can still be denied counsel. This condition is referred to as a Constructive denied of counsel.

When defense counsel failed to use Angela Briere prior statement or the inconsistencies in her testimony. Defense counsel was prejudicing Petitioner because defense counsel entirely failed to give the prosecution case a meaningful adversarial testing, counsel was not standing as counsel at a critical stage of the trial. Defense counsel failed to call valuable witnesses like an alibi witness, Steven Simmons. Mr. Simmons testimony would have proven that Petitioner was not near the crime scene, defense counsel failed to also use cell phone tower to also prove Petitioner innocence, defense counsel failed to call Antonio Rosser because testimony the jury heard that morning, but the jury also heard defense counsel use statements that Antonio made to Mr. Daley.  Defense

counsel failing to put the prosecution case to meaningful adversarial testing, for counsel complete denial of counsel which is Constructive denied of counsel, counsel performance falls below an objective standard of Strickland court.

Petitioner was prejudice because defense counsel failed to objected to the admission of the "victim" Lakisha McGowan 911 call, the 911 call was after the emergency making the 911 call testimony evidence. See **Brown v. Keane, 355 F.3d 82;1)** The confrontation clause and the present impression exception: The sixth amend. To the United States Constitution, made applicable to the states through the fourteenth amend., provides, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. The purpose of this so called confrontation clause is to ensure that defendants have the opportunity to subject the prosecution's evidence to cross-examination. See also **Maryland v. Craig, 497 U.S. 845, 111 L.Ed. 2d 666, 110 S. Ct., 3157(1990)** The confrontation clause thus protects statements from evidence (where offered to prove the truth of their assertions) unless they fall within certain exceptions developed in the common law and specified in federal and state rule of evidence, which are thought to be justified because statements made under the specified circumstances have a high degree of reliability. **See Ohio v. Roberts, 448 U.S. 56, 66, 65 L.Ed. 2d 597, 100 S. Ct. 2531(1980)**. ("Hearsay rules and the confrontation clause are generally designed to protect similar values and stem from the same roots.") Accordingly, the Supreme Court has drawn on the law of hearsay in expounding the Jurisprudence of the confrontation clause. **See Paris v. Turner, 1999 WL 357815(6th Cir 1999_ also see in re Davis, 565 F.3d 810(11th Cir 2009).**

C.) Petitioner argues that the state violated his Confrontation clause right by using Holly Paul the 911 call operator, to authenticate and testify to the 911 call. The jury never really knew if "victim" Lakisha McGowan was the one on this 911 call, because Holly Paul the 911 operator can

only testify to what she knows, and what Holly Paul knew is that a woman called the sheriff's office via 911, on the call the caller says that they think someone just threw something off the bridge or something, Holly Paul can only testify to that. The state needed Lakisha McGowan to prove it was her on the 911 call, and testify to the content of the 911 call. So when "victim" Lakisha McGowan never appeared to testify, thee 911 call of Lakisha McGowan was after the emergency so that call was testimony of Lakisha McGowan, so Petitioner was deprived of cross-examination of the state case violating the confrontation clause, when photos of Jonathan Jr. also the "victim" who never appeared nor testify to his injuries, Trooper Daley and "victim" Thaddaeus Rosser testify to the photos, like state's exhibit 3E is as follow:

> **The State:** and state's exhibit 3E
>
> **The Witness:** okay.
>
> **The State:** are you aware of any injuries or did you observe any injuries to Jonathan McGowan Jr. to either of his hands?
>
> **The Witness:** If so, I can't see them.
>
> **The State**: All right. Do you recall seeing any that particular day, either while you were in the U-Haul or prior to medical attention?
>
> **The Witness:** No. I just notice his eye.

**(Tr. Vol2 184 Line 10-25)**

So to some of the state's exhibit of Jonathan Jr. photos could not be cross-examination because defense counsel not objecting to the in admission of the two victims evidence how could that be trial strategy to violate their own client's rights. Mrs. McGowan wrote a notarized letter to Petitioner sentencing **(Tr. Sent. 10-at 11-25)** and after that Mrs. McGowan wrote affidavit stating what she would have testify to if she would have testified. Petitioner has the right to confront the

witness against, and both "victims" Thaddaeus Rosser and Lakisha McGowan, both are saying that there was no one on the side of the U-Haul, Lakisha McGowan went as far as to tell the location of where the shots came from in her affidavit which is **"Exhibit L"** of this traverse **Engle v. Isaac, 456 U.S. 107.**

However, the dispute about the calls from the summit county jail, Petitioner was trying to explain apart of Petitioner's discovery packet, Petitioner was not given the opportunity to listen to that call because the call was not listed in the police report so state's "exhibit 27B" was never turnover in Petitioner's motion of discovery, Petitioner's defense counsel argued for the call to be played, but when a jail call in favor for the defense, defense counsel argued for the call not to be played because this call was of Petitioner and "victim" Lakisha McGowan who never appeared to testify. Petitioner and "victim" Lakisha McGowan talking about the state's evidence plus Lakisha McGowan states in this call how the shots came from the opposite side of the highway and defense counsel argued for this call states exhibit 28B not to be played for the jury. So how was this trial strategy this prejudiced against Petitioner because the state's evidence testimony from Trooper Daley, Angela Briere testify that Petitioner was on the side of the U-Haul, this call defense counsel did not want played show Petitioner's innocence and defense counsels strategy not to play the call prejudiced Petitioner. **(Tr. Vol2. 290-292) Brady v. Maryland, 373 U.S. 83, see also Stricker v. Greene, 527 U.S. 263. Also see Kyles v. Whitley, 514 U.S. 419.)**

Petitioner suffered severe prejudice when counsel did not put the prosecutors case to meaningful adversarial testing. **Cronic, 466 U.S. at 659, see also Fla. V. Nixon, 543 U.S. 175, 190-92(2004)** (counsel's concession of client's guilt to jury in capital case was not complete failure of representation.) **See Bell v. Cone, 535 U.S. 685, 697-98(2002)** (counsel's failure to oppose

prosecution at specific point warranted Strickland analysis rather than prejudice presumption because counsels representation was not complete failure to test prosecution.)

D.) Petitioner argues, from the time Petitioner was indicted on February 20, 2018, there was a firearm used in this "said" crime, Petitioner has been tried and convicted on. Petitioner has one or many arguments about. The reason is this, the firearm Petitioner was convicted on and is asking for writ habeas corpus relief. The reasons are as follows:

1.) The firearm "said" was used in this "said" crime is a Taurus 380 SN 66455C. Collected January 29, 2018, by a Trooper J. Daley, from the home of Adam McGowan traverse **"Exhibit SW"**.

2.) Petitioner was indicted February 20, 2018, the averments to obtain this "said" indictment was a Taurus 380 SN 66455C. The prosecutor who presented these documents containing the "said" Taurus 380 SN 66455C," John D. Ferrero #0018590" the search warrant inventory of the item seize which document a Taurus 380 SN 66455C also Trooper J. Daley report of investigation.

3.) Petitioner had his arraignment on March 2nd, 2018.

4.) Petitioner filed a suppression hearing motion to suppress his statement on March 20, 2018.

5.) March 27, 2018 The B.C.I. Lab results for the "said" Taurus 380 this is when the serial number change from 66455C to 56455C. At this point in Petitioner's case two things should had happened.

1.) Petitioner should have been dismissed of all charges or 2.) Petitioners indictment should have been resubmitted to the grand jury. **See Ex Parte Bain, 121 U.S. 1,** The declaration of article v. of the amend. to the Constitution, that no person should be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, is jurisdictional and no court of the United States has authority to try a prisoner without indictment or presentment in such case. 2.) The indictment here referred to is the presentation to the proper court, under oath, by a grand jury, duly impaneled, of a charge describing an offense against the law for which the party

charged may be punished. 3.) When this indictment is filed with the court no change can be made in the body of the instrument by order of the court, or by the prosecuting attorney, without a resubmission of the case to the grand jury. And the fact that the court may deem the change immaterial, as striking out as surplus words, makes no difference. The instrument, as thus change, is no longer the indictment of the grand jury which presented it. 4.) This was the doctrine of the English court under the common law. It is the uniform ruling of the American courts, except where statutes prescribe a different rule; and it is the imperative requirement of the provision of the Constitution above recited, which would be of little avail if an indictment once found can be change by the prosecuting officer, with consent of the court, to conform to their views of the necessity of the case. 5.) Upon an indictment so change the court can proceed no further. There is nothing in the language of the Constitution) which the prisoner can "be held to an answer." A trial on such indictment is void. There is nothing to try. 6.) According to principles' long settled in this court, the prisoner who stands sentenced to the penitentiary on such trial, is entitled to his discharge by habeas corpus.

Petitioner argues, when the B.C.I. lab result came back to a different serial number for the Taurus 380, that means that the immaterial averment change in the indictment. So on April 25,2018, petitioner can prove that his defense counsel knew of this issue with the serial number and refused to put the prosecuting case to meaningful adversarial testing by not filing a suppression hearing to get the Taurus 380 to be inadmissible because it was incompetent evidence or file a motion to dismissal because the "said" Taurus 380 s/n 66455c was not the firearm used to committed the "said" crime.( petitioner placed in evidence of this traverse the chain of custody, by the owner of the Taurus 380 s/n 66455c is a John Welsh (Tr. Vol2. 353 At 1) next the collection of the Taurus .380 s/n 66455c from the home of Adam McGowan on January 29,2018 by a Trooper

J. Daley by way of search warrant traverse **"Exhibit SW"**, Trooper Daley show proof of this Taurus 380 s/n 66455c check the report of investigation **"Exhibit RI"**, that's where chain of custody for the Taurus 380 s/n 66455c stop!!! Then, the Taurus .380 s/n56455c "pop into the case" the Taurus 380 s/n 56455c has no chain of custody but the Taurus 380 that match the ballistics. This mean the Taurus 380 s/n 66455c was not used in the "said" crime making petitioner a person who stand sentence on change indictment. The record is as follows…

> **The court:** All right, good to see everybody. That'll be all. Do you have any question, sir, about anything that's going on?
>
> **The petitioner:** I do
>
> **The court:** Well, slow down, I, I—I'm not here to cause any grief or any problems I, I just always ask as a courtesy if they have question. Do you want me to answer his question or do you want the question to come through you or do you just want me not to do anything at all? I'm just trying to be courtesy to everybody.
>
> **Defense counsel:** Your, Honor, there is an issue. There are two different serial numbers on the gun. Just – it's written down one way and written – and—by the B.C.I. person on the other. I've explained many times to my client how that is not a part of the suppression motion—
>
> **The court:** right
>
> **Defense counsel:** -- and it's not suppressible because it—
>
> **The court:** right
>
> **Defense counsel:** -- was not—it was taken with search warrant from somebody else's house.
> The court okay right.

**(Tr. Sup. 43-44)**

So on April 25,2018, defense counsel refuse to put the prosecuting case to adversarial testing, see **Cronic, 466 U.S. at 659, also see Fla v. Nixon, 543 U.S. 175,190-92 (2004) also see Bell v. Cone, 535 U.S. 685, 697-98 (2002)** with defense counsel's performance **violated Ex Parte Bain, 121 U.S. 1.**) Now if petitioner's defense counsel would have move for dismissal of all charges, petitioner would not have been sentence to 52 yrs. On a crime he never committed. The state court lost jurisdiction on March 27,2018. Petitioner was deprived of his Due process because defense counsel failing to function asked of under the Strickland standard.28 U.S.C. 2254(d) The Petitioner must show clear and convincing evidence of Petitioner's dispute with trial counsel. Petitioner has set forth in this traverse how his defense team was constitutional ineffective for failing to hold the prosecuting case to meaningful adversarial testing, by not calling or using valuable witnesses also by not allowing their client enjoy his sixth amend. Right to confrontation clause and/ or compulsory process petitioner's defense team also violated petitioner fourteenth amend. To Due- process of law. Trial counsel failed to objected to the admission of "victim" Lakisha McGowan 911 call violated the confrontation clause, **Brown v. Keane, 355 F.3d 82, see also Noble v. Kelly, 246 F.3d 93, also Washington v. Texas, 388 U.S 14, 17-19)** Petitioner defense team ineffective for failing to impeach state key witness prior statement **Raether v. Meisner, 608 Fed. Appx. 409, also see Toliver v. McCaughtry, 539 F.3d 766, 778 (7th cir. 2008)** Petitioner's defense team was ineffective for the defense team failing to file valuable motion to free their client, for the defense team failing to perform as ask of the Strickland court prejudice the petitioner sixth amend. And fourteenth amend. And Petitioner is entitled to Habeas corpus relief.

Because Mr. McGowan was denied his right to due-process of law by ineffective assistance of counsel, the writ must issue, and he is entitled to new trial.

**GROUND TWO:** Insufficient evidence was presented at trial to each element of the crime alleged and the court erred in denying Petitioner's rule 29 motioned.

**Ex perte tuley , 109 s.w.3d 388 (Tex.crime App.2002) see also Jackson v. Virginia, 443 U.S. 307, "**In a habeas corpus proceeding arising from a claim that a person has been convicted in a state court upon insufficient evidence, a federal court must consider whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt, and should not restrict its inquiry to whether there is any evidence to support the conviction; accordingly, in a challenge to a state court conviction under 28 U.S.C. 2254, the applicant is entitled to habeas corpus relief, assuming settled procedural prerequisites for such a claim have otherwise been satisfied, if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt in terms of the substantive elements of the offense as defined by state law".

In Petitioner's case the only evidence placing petitioner on the crime scene is the testimony of states key witness Angela Briere. The state knew Ms. Briere testimony was false testimony and never corrected Ms. Briere on her false testimony also the state knew Trooper Daley testimony was false as well and that testimony went uncorrected as well. **See, Napue v. Illinois, 360 U.S. 264. "**The principle that a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness, the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying

falsely that defendant's life or liberty may depend. It of no consequence that the falsehood may bear upon a witness' credibility rather than directly upon a defendant's guilt. A lie is lie, no matter what its subject, and, if it is in any way relevant to the case, the prosecutor has the responsibility and duly to correct what he knows to be false and elicit the truth". See **also Pyle v. Kansas, 317 U.S. 213,** "one who's inexpertly drawn petition to a state court for a writ of habeas corpus charging that his conviction of crime and subsequent imprisonment was obtained by the presentation of testimony known to the state authorities to be perjured and by the deliberate suppression of testimony favorable to him. Conviction of another for complicity in the same crime reveals that the testimony there presented was inconsistent with the evidence presented at petitioner's trial and clearly exonerates petitioner, is entitled to a determination of the verity of such allegations".

A)      Petitioner argues, the state presented to the jury of petitioner's trial was known use of false testimony and petitioner's conviction was obtained by tainted evidence, first use of false testimony by the state was the use of Trooper J. Daley's testimony to states exhibit 20 at trial, Trooper Daley testify to the firearm allege used in the crime charged the content of its serial number, the testimony is as follow...

> **The state:** I'm going to show what's marked for identification purposes as states exhibit 20 can you identify what that is?
>
> **Trooper Daley:** Yes, this would be the black handgun seen in the photograph the Taurus.380
>
> **The State:** Okay, and how do you know that, that is the black handgun that you collected from the apartment that day?
>
> **Trooper Daley:** Because from the apartment it went to our evidence, from evidence its remained in the box and was packaged into two separate boxes, firearm boxes; one being this one and then the silver one in the other and....

**The State:** And is that the same firearm that you photographed in states exhibit 19c and d?

**Trooper Daley:** Yes.

**The State:** so—and again, can you – it's this firearm right here (indicating)

**Trooper Daley:** correct.

**The State:** Now, do you do anything when you collect firearms to document what firearms it was that you collected?

**Trooper Daley:** Well, when we do search warrants, in general, we'll take photographs of everything and for that documentation purpose, but then also for the warrant we do the return which was done there at the apartment; so it was written and documented on there.

**The State:** And do you document anything like serial numbers, anything like that?

**Trooper Daley:** Yes.

**The State:** And do you recall what serial number you documented as far as the gun that you recovered from Adam McGowan?

**Trooper Daley:** It came to my attention when we received the B.C.I. report that had written the 5, which is actually a 5 and had seen it and written it as a 6; the very first number on the serial number.

**The State:** Okay. All right, and can you just indicate what the full number was that you recovered at the time?

**Trooper Daley:** I wouldn't be able to recall from memory.

**The State:** OH, okay, I didn't know if it was on the box there or anything.

**Trooper Daley:** The sticker appears—yes, right here. Okay. So the stickers on the side. So I recorded the serial number 66455c as in Charles.

**The State:** All right. And can you show us, where on this firearm that the serial number would be located? And you can look at this currently fastened to the box and has a trigger lock.

**Trooper Daley:** So on the Taurus TCP, which is the small black window right here on the left-hand side behind the slide lock and release is where the serial number is.

**The State:** And as you sit there today, can you look at that? Can you see what the serial number is?

**Trooper Daley:** It's 56455 Charles.

**The State:** All right, and when you looked at it back in January, you indicate that you saw and write down the first number as a 6 as opposed to a 5?

**Trooper Daley:** correct.

**(Tr.vol.2.305-308)**

Petitioner argues, Trooper Daley admitted that when he first collected the Taurus.380 when looking at the serial number he saw a 6 and wrote the serial number for the Taurus.380 as 66455C, Trooper Daley also admitted it was when the B.C.I. report came back that it came to his attention the serial number was 56455C, that's the serial number Trooper Daley read off at trial which was perjury, the reason it's perjury, because during the direct appeal the Appellee brief on page 8 read as follow...

> "Daley took photographs of the firearms at the scene. The Taurus.380 was photographed with the serial number of 66455c states exhibit 20."So this is where the perjury came in if the Taurus 380 was photographed with the serial number 66455c, Trooper Daley never made no mistake because that's the serial number documented in all the paperwork to obtain Petitioner's indictment and the state let Trooper Daley lie go uncorrected, in fact the state vouch for the mistake in the closing arguments it is as follow... "why did he write it down 3 times, ladies and gentleman, his testimony was that this pretty much all happened at the same time. He made the error and then he copied the error down the same way three different times. The allegation is somehow he's going to write the wrong serial number for the wrong gun and then somehow document that it was a different gun, that somehow were putting it together

and putting fake guns together? He's not going to document that. It was a human error plain and simple.

**(Tr. Vol3 606-607)**

**United States V. Young, 470 U.S. 1**, ABA Standard for Criminal Justice 4-7, 8 provides;(A). In closing argument to the jury the lawyer may argue all reasonable inference from the evidence in the record. It is unprofessional conduct for a lawyer intentionally to mistake the evidence or mislead the jury as to the inference it may draw.(B) It is unprofessional conduct for a lawyer to express a personal belief or opinion in his client's innocence or personal belief or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person unless such an inference is warranted by the evidence.(C) A lawyer should not make arguments calculated to inflame the passion or prejudices of the jury.(D) A lawyer should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issue broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict.(E) It is the responsibility of the court to ensure that the final argument to the jury is kept within final argument to the jury is kept within proper accepted bounds. **Bennett v. Collins, 835 F.Supp. 930(E.I.) Tex.1993).**

Petitioner argues, the state vouching for Trooper Daley mistake about the serial numbers, The State knowingly let false testimony go uncorrected prejudiced the defense because it was favorable evidence to the Petitioner. Reason being, in the states direct appeal brief according to page 8, Daley took photographs of the Taurus 380. And it was photograph

with the serial number 66455C. Note: the two Taurus 380 look identical and this is how the state mislead the jury to belief Trooper Daley made the mistake.

**Quoting United States V. Young, 470 U.S. 1,** (B). Its unprofessional conduct for a lawyer to express a personal belief or opinion in his client's innocence or personal belief; or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person unless such an inference is warranted by the evidence. See also**; U.S. v. Little John, 489 F.3d 1335, 1344-45 (D.C. Cir. 2007)** abuse of discretion when courts ask compound voir dire questions in which the jury were instructed not to indicate whether they or their family members or friends had worked in law enforcement unless they believed they could not be impartial and other questions inadequate to ensure defendant had opportunity to uncover potential serious source of bias.)

Petitioner argues, with the prosecutor vouching for Trooper Daley the state knew that they could inflame the passion or prejudices of the jury, because there were jurors that feel cops can make mistakes, also this juror has Ohio state patrol Trooper as a family member, theirs an Ohio state patrol officer named Trooper J. Daley...

Now, Trooper Daley testifies that "He seen it and writ it as a 6"; with this particular juror (#173) feeling as if cops can make mistakes is a serious source of bias **(Tr. Vol 1 91)** and the state is vouching for this mistake calling it "just a human error". But on cross-examination, Trooper Daley testifies to the recovery sheet he done for the Taurus 380, S/N 66455c owned by a John Welsh,

**(Tr. Vol2 353 at line1).**

So not only did Trooper Daley do the wrong serial number, but he also done the wrong serial number on the recovery sheet of the firearms. There are no showings of Trooper Daley recovering a Taurus 380 S/N 56455c so how many human errors can Trooper Daley make before it(s) can be police misconduct. With this juror sitting as jury on Petitioners trial show a very serious source of bias, with juror #145 having a close family friend that's a state trooper; and juror #173 has a cousin that is retired state highway patrol (no name given). Plus, juror #173 feels police officers can make mistakes; juror #171 is a friend a neighbor with North Cantons Chief of police, John Minoch; juror #172 has an aunt that is retired but worked for the Stark county prosecutor's office, named Nikki Stoffer; juror #164 was a victim but dropped charges and feels it doesn't mean nothing happened. With the state vouching for their witnesses, this would inflame and passion or prejudices of the jury and that is a serious source of bias.

See also; **Napue v. Illinois, 360 U.S. 264,** The principle that a state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the truthfulness and reliability of a given witness may well determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that defendants life or liberty may depend. It is of no consequence that the false hood may bear upon a witness credibility rather than directly upon a defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case. The prosecutor has the responsibility and duty to correct what he knows to be false and elicit the truth. prosecutor deliberate suppression of this.

B) In petitioner case the prosecutor failed to correct what he knew to be false and elicit the truth, but instead vouch for the lie that Trooper Daly falsely testify to about the Taurus .380, see direct appeal appellee brief on page 8. Show that the prosecutor knew Trooper Daly was lying about making the mistake on the serial numbers. So the Taurus .380 Trooper Daly collected was not the gun that committed the crime and Taurus .380 at trial was, but no one knew where it came from but Trooper Daly. So when the state vouched for it, the state has inflamed the passion or prejudices of the jury. (B.) Furthermore, the state let more uncorrected false testimony of the key witness Angela Briere, the false testimony of Mrs. Briere, Mrs. Briere testify that she was the driver of petitioner vehicle when the crime was committed, so the petitioner will show false testimony of Mrs. Briere with clear and convincing Evidence as require under "AEDPA" standard. So this Mrs. Briere testimony, Mrs. Briere testify petitioner woke her up at his apartment on the Southside of Akron, Ohio. Mrs. Briere testify that petitioner wanted her to drive to the north side of Akron, Ohio to check and see if victim," Lakisha McGowan" U-Haul was still parked outside Lakisha daughter home, which is 1183 Big falls. Mrs. Briere testify she enter I-77 north by Lakeshore and Miller which is located on the Southwest of Akron. Mrs. Briere testify she gotten on I-77 north by lakeshore and miller which is located on the Southwest of Akron. Ms. Briere testify she gotten on I-77 north, just north of lakeshore entrance because the lakeshore entrance was close at the time. Ms.Briere testify while on I-77 north going toward Lakisha daughter house on the north side of Akron and Petitioner spotted the U-Haul of "victim" Lakisha McGowan. Ms. Briere

testify Petitioner made her get off I-77 north and reenter on I-77 south where Akron and Canton meet **(Tr.Vol 3. 418-420)** This was false testimony and insufficient evidence that went uncorrected by the prosecutor. "The reason this was false testimony was because Canton is south of Akron. "Now if Ms. Briere and Petitioner was leaving the South side of Akron going north on I-77, there no way possible Ms. Briere and Petitioner would see the U-Hal right where Akron and canton meet. Furthermore, when Ms. Briere testify that she enters I-77 north, just north of the lakeshore entrance was also false testimony because there's no entrance for I-77 north, just north of the lakeshore and Miller entrance to prove that there's no I-77 north, just before the lakeshore and Miller entrance.(Exhibit M1) When Ms. Briere testify about the shooting and vehicle's around Ms. Briere testify moments just before the shooting that the only vehicle around was a red and silver pick-up truck a little bit ahead of her and Petitioner **(Tr. Vol 3. 397 at 11)** So according to Ms. Briere it would be impossible for Petitioner to be the shooter of the U-Haul. Because according to the "victim" Thaddaeus Rosser this red and silver pick-up truck was passing the U-Haul after the shooting happens. **(Tr.Vol 2. 202- 204)** The prosecutor also let this false testimony go uncorrected when it appears this was very relevant to the case and the prosecutor fail to correct it and elicit truth. This was favorable evidence for Petitioner and the evidence.

**See Napue V. Illinois, 360 U.S. 264. See also Pyle V. Kansas, 317 U.S. 213,** The constitutional requirement of due- process was not satisfied where a conviction was obtained by the presentation of testimony known to the prosecuting authorities to

be perjured and by the deliberate suppression by the same authorities of evidence

favorable to defendant.

The state deliberate suppress evidence favorable to the Petitioner because the state

knew the Taurus.380 presented at trial as state exhibit 20 was not the same as in the

photographs of state exhibit 19c and D, the Taurus.380 of state exhibit 20 has no chain of

custody of where it was collected from, just Trooper Daley saying that he made the mistake.

The favorable evidence for the defendant was the Taurus.380 in state exhibit 19c and D,

because it was not the Taurus.380 that committed the shooting on January 14,2018. Also states

Exhibit 19C and D was collected January 29,2018 from Adam McGowan home Via the search

warrant return done by Trooper Daley for Adam McGowan, Trooper Daley documented a

Taurus.380 s/n 66455C. The Appellee admitted this in the direct appeal brief on page 8, so that

means that when Trooper Daley testify to states exhibit 20 as to the serial number being s/n

56455C the prosecutor never corrected Trooper Daley "like the serial numbers on the

photographs are not the same as you just testify to the correct serial numbers are 66455C in

these photographs."  Instead of correcting Mr. Daley the state vouches for him in closing

argument, so that would be the state deliberate suppress of favorable testimony. Now how the

state deliberate suppress of Ms. Briere perjury testimony, when Ms. Briere was testifying of the

streets in Akron yes the state was most likely unaware of that part of the false testimony, but

when Ms. Briere testify to Petitioner telling her to turn around to follow the U-Haul where

Akron and Canton meet, the state knew that was an impossible act to be done and when it

appear it went uncorrected, Ms. Briere testify to the red and silver pick-up truck being a little

bit ahead of her and Petitioner that also went uncorrected, because the state knew Thaddaeus

Rosser testify that it was passing after the shots happen. Now the state did correct Ms. Briere when she testifies to seeing the U-Haul going to the berm of the highway. **(Tr.Vol 3. 422 at 3)**

The state did correct Ms. Briere on that testimony when it appears by asking, and you were also asked about details about where the U-Haul went after the shooting.

**The State:** Am I correct that your testimony was that immediately after that you actually pulled up in front of the U-Haul and off the exit?

**Ms. Briere:** correct.

**The State:** All Right. And thus, the U-Haul would have been behind you?

**Ms. Briere:** Correct

**The State:** And would you have been able to see where the U-Haul went without looking behind you while you were driving?

**Ms. Briere:** No

**The State:** All right. What were you focused on?

**Ms. Briere:** Panicking

**The State:** Okay, and you were asked a lot about when you talked to Trooper Daley, how long after the incident, etcetera. This incident happens January 14, 2018 correct?

**Ms. Briere:** Correct.

**(Tr. Vol 3. 441-444)**

Never at one time did the state correct Ms. Briere about this, according to Ms. Briere testimony Ms. Briere is saying in her testimony, when her and Petitioner got on I-77 north in Akron Ohio, while on this highway when she was asked where did you see the U-Haul Petitioner tells you to turn around and follow the U-Haul, Ms. Briere states right where Akron and Canton meet, this is the "most" impossible act she could have testify to. Because if Akron is north of

Canton, and Petitioner and Ms. Briere is already in Akron Ohio, Petitioner would never see the U-Haul where Akron and Canton meet. Unless Petitioner and Ms. Briere was five to ten minus in Canton, but how when Ms. Briere testify saying Petitioner woke her up at Petitioner apartment on the south side of Akron. Furthermore, when Ms. Briere putting this only red and silver pick-up truck in front of her and petitioner this was also a very impossible act, because all the shots came from the front driver side, the prosecutor never corrected these impossible act Ms. Briere testify that happen.

Under Jackson V. Virginia, 443 U.S. 307, In a habeas corpus proceeding arising from a claim that a person has been convicted in a state court must consider whether there is sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt, and should not restrict its inquiry to whether there is any evidence to support the conviction; accordingly, in a challenge to a state court conviction under 28 U.S.C.S 2254, the applicant is entitled to habeas corpus relief, assuming settled procedural prerequisites for such a claim have otherwise been satisfied, if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt in terms of the substantive elements of the criminal offense as defined by state law. Also see, Napue V. Illinois, 360 U.S. 264, see also Pyle V. Kansa, 317 U.S. 213, Petitioner was prejudice by the state for the Vouching and bolstered of the witnesses in this case and under Hodge V. Hurley, 426 F.3d 368, 378 (6th cir 2005), Quoting united State V. Young, 470 U.S. 1,18-19 (1985), the court observed, "The prosecutor's opinion carries with it the imprimatur of the government and may induce the jury to trust the governments judgement rather than its own view of the evidence." In Hodge, the court reversed for prosecutorial misconduct in part because the conviction rested almost

entirely on the credibility of the witnesses the prosecutor bolstered. Now with the state

bolstered Trooper Daley and Ms. Briere testimony violated **Hodge v. Hurley, 426 F. 3d 368, 378**

**(6th Cir 2005)** and petitioner is entitled to a new trial. So the writ must issue and he is entitled to

a new trial.


### Cumulative Prejudice

In this traverse, MR. McGowan has addressed why each particular ground for relief was prejudicial to him. Without waiving his contention that each instance, by itself, merits relief. Mr. McGowan point out that, in assessing prejudice, this court must consider all of the instances insufficient of the evidence at each element of the crime, due to the ineffective assistance of counsel which the court finds to have been established together. **In White v. Roper, 416 F. 3d 728 (8th Cir 2005), cert denied, 546 U.S. 1157 (2006),** the court found prejudice from counsel's ineffectiveness in failing to investigate and call two witnesses. **In Cargle v. Mullin, 317 f 3d 1196 (10th cir 2003),** the court found prejudice both because of numerous instances of ineffective assistance of trial counsel and because of prosecutorial misconduct (Brady violations) see **also Harris ex. Rel Ramseyer v. Wood, 64 F. 3d 1432, 1434 (9th cir. 1995)** Because Benjamin Harris was deprived of his sixth amendment right to effective assistance of counsel, we hold that the district court properly granted his petition for a writ of habeas corpus. His defense counsel's many deficiencies cumulatively prejudiced the defense **"Mak v. Blodgett, 970 F. 2nd 614, 622, 624-25 (9th cir 1992)** (cumulative errors requiring reversal included counsel's failure to present mitigating evidence in the penalty phase, the court's refusal to admit exculpatory evidence and its failure to instruct the jury properly in the penalty phase.)

Cumulative prosecutorial misconduct also can merit relief, Kyles. **Whitley, 514 U.S. 419…437 (1995); Vincent v. Seabold, 226 F. 3d 681, 690 (6th cir 2000)** (errors in trial, taken together, were not harmless.) **Depew v. Anderson, 311 F. 3d 742, 751 (6th cir 2002)** ("cumulatively it is clear that these prosecutorial misconduct errors are not harmless") **Jenkins v Artuz, 294 F 3d 284 (2nd cir 2002)** (cumulative effect of prosecutor's presenting false testimony and improper summation required reversal) Thus, even if no one instance of prosecutorial misconduct or ineffective assistance is found to require relief, they must be considered in the aggregate.


### Conclusion

For the foregoing reasons, Mr. Smith prays the court to issue the writ, and to vacate his conviction and sentence and order that Mr. McGowan be afforded a new trial within 60 days of this court's order, or be released from custody.

Respectfully Submitted,

Jonathan C. McGowan

Petitioner, *Pro Se.*

Ross Correctional Institution
P.O. Box 7010
Chillicothe, Ohio 45601

Attorney for Petitioner

Certification Regarding Service

I hereby certify that it is my belief and understanding that counsel for respondent, Asst. Atty. Gen. Mary Anne Reese, is a participant in the court's CM/ECF program and that separate service of the foregoing document is not required beyond the notification of electronic filing to be forwarded on October 17th, 2022 upon the filing of the foregoing document.